# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | |
|---|---|
| TRANSOURCE PA., LLC,<br>      Appellee<br><br>v.<br><br>STEVEN DEFRANK, ET AL.,<br>      Appellants | No. 24-1045 |

### EMERGENCY OMNIBUS MOTION TO WITHDRAW AS COUNSEL, INTERVENE IN THIS APPEAL, AND EXTEND THE TIME FOR THE PROPOSED INTERVENOR TO FILE A PETITION FOR EN BANC REVIEW

The Pennsylvania Office of Attorney General, by undersigned counsel, files this emergency motion seeking the following relief: (1) an order permitting the Attorney General to withdraw as counsel for the Pennsylvania Public Utility Commission and its Commissioners ("PUC"); (2) an order granting the Commonwealth of Pennsylvania and the Pennsylvania Office of Consumer Advocate to intervene in this appeal for purposes of seeking rehearing *en banc* and, if necessary, certiorari; and (3) a 30-day extension of time for the filing of a petition for rehearing *en banc*. In support of this motion, undersigned counsel avers the following:

This appeal concerns who gets to decide whether an interstate electric transmission line is beneficial: the State or a non-governmental entity (a regional transmission organization ("RTO")). On September 5, 2025, a panel of this Court

ruled, in a 65-page precedential opinion, that this decision belongs to the RTO, here, PJM Interconnection, LLC.

As a result, the PUC's petition for rehearing before the Court, *en banc*, was originally due by September 19, 2025. Because of the complexity of this case, the need for the Attorney General and the PUC to consult about further appellate review of this case, and undersigned counsel's competing responsibilities, the PUC sought a 30-day extension of time for the filing of its *en banc* petition. On September 12, 2025, this Court granted that motion, extending the time for the PUC to file its petition until October 20, 2025.

On September 29, 2025, undersigned counsel learned from the PUC for the first time that it did not want to pursue further review before this Court or the United States Supreme Court. The Office of Attorney General made inquiries regarding the basis for this change of course, and the Attorney General spoke personally with the PUC Chairman. A full rationale was provided at a recent meeting this week, and the Commission released a public letter addressing the matter yesterday, on October 16, 2025. Having now seen and evaluated the PUC's proffered rationale, the Attorney General has determined that intervention is appropriate, on behalf of the Commonwealth and the Pennsylvania Office of Consumer Advocate.

The Attorney General is the "chief law officer of the Commonwealth." Pa. Const., Art. IV, § 4.1. He has a constitutional and statutory duty to "uphold and

defend the constitutionality of all statutes so as to prevent their suspension or abrogation in the absence of a controlling decision by a court of competent jurisdiction." 71 P.S. § 732-204(a)(3). The Commonwealth Attorneys Act established the Office of Attorney General as an "independent department," *see id.* at § 732-201(a), and empowers the Attorney General to "intervene in any [civil] action." *Id.* § 732-204(c). The Commonwealth Attorneys Act further provides that the Attorney General "shall at all times … represent the Commonwealth" where, as here, there is a difference of view between the Attorney General and an executive branch agency or independent agency (like the PUC). *Id.* at §§ 732-303(b) and 742-403(b); *see also Synthes USA HQ, Inc. v. Commonwealth*, 289 A.3d 846, 861 (Pa. 2023).

Additionally, the Attorney General is statutorily required to appoint a Consumer Advocate. 71 P.S. § 732-201(b). The Consumer Advocate has the duty "to represent the interest of consumers as a party . . . before the [PUC] . . . before any court or agency . . . in connection with any matter involving regulation by the [PUC]." 71 P.S. § 309-4(a). The Consumer Advocate participated as a litigant in this matter when it was before the PUC. After a years-long process, the PUC determined, based in part on Transource's own data, that this particular project would impose great costs with little to no benefit. Transource unsuccessfully appealed to Pennsylvania Commonwealth Court. It then decided to transform the state regulatory

decision into a federal matter, raising novel claims that had never previously been adjudicated in a federal judicial forum. On appeal to this Court, the Consumer Advocate participated as an amicus because the PUC was adequately representing the interests of consumers. Had the PUC not done so, the Consumer Advocate would have participated as a party. The proposed transmission lines here would result in a rate increase of $400 million for Pennsylvania consumers. JA166. The Consumer Advocate (as does the Attorney General) has a weighty interest in protecting consumers from these increased costs that come with no countervailing benefits, as previously determined by the PUC.

Notwithstanding the panel's decision, the Attorney General and the Consumer Advocate believe that 66 Pa.C.S. § 1501 and 52 Pa.Code § 57.76, as applied in this matter, do not violate the Supremacy Clause and, therefore, are constitutional. As such, the Attorney General is obligated to defend these laws. For this reason, and other reasons that follow, this Court should permit the Commonwealth and the Consumer Advocate, through the Attorney General, to intervene in this appeal for purposes of seeking further review.

There are no rules governing appellate intervention. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 276-77 (2022). Therefore, the United States Supreme Court has said that appellate courts must look to the "'policies underlying intervention' in the district courts." *Id.*, quoting *Automobile Workers v.*

*Scofield*, 382 U.S. 205, 217 n.10 (1965) (noting that the Federal Rules of Civil Procedure "apply only in federal district courts"). For intervention by a "state governmental officer or agency" in the district court, intervention is permitted if the motion is timely; the issue is based on a statute, executive order, or regulation which is administered by the officer or agency; and intervention will not cause undue prejudice or delay to the original parties' rights. *See* Fed.R.Civ.P. 24(b)(2), (3).

Although permissive intervention is committed to "the discretion of the court before which intervention is sought," *Cameron*, 595 U.S. at 279-80, a court should take a "hospitable attitude" toward permitting intervention by a government officer. *See Blowers v. Lawyers Co-op Pub. Co.*, 527 F.2d 333, 334 (2d Cir. 1975); *Metro Transp. Co. v. Balboa Ins. Co.*, 118 F.R.D. 423, 424 (E.D. Pa. 1987) (noting that Rule 24(b) "requires that intervention be granted liberally to governmental agencies because they purport to speak for the public interest").

Starting with timeliness, that factor must "'be determined from all the circumstances,' and 'the point to which a suit has progressed is not solely dispositive.'" *Cameron*, 595 U.S. at 1012, quoting *NAACP v. New York*, 413 U.S. 345, 365-66 (1977). "[T]he most important circumstance relating to timeliness is that the attorney general sought to intervene 'as soon as it became clear' that the Commonwealth's interests 'would no longer be protected.'" *See Cameron*, 595 U.S. at 279-80. As noted, the Attorney General did not learn of the PUC's decision not to

seek further review until September 29, 2025, and learned of its rationale this week. The Attorney General could not properly determine whether to exercise his authority to seek intervention until the PUC's rationale could be evaluated. "The attorney general's need to seek intervention did not arise until the [PUC] ceased defending the state law," and explained its rationale for not pursuing further appellate review. *Id.* at 280. The timeliness of the Attorney General's "motion should be assessed in relation to that point in time." *Id.* Thus, the fact this litigation has "proceeded for years . . . is not dispositive." *Id.*; *see Eakin v. Adams Cty. Bd. of Elections*, No. 25-1644 (3d Cir.) (Doc. 64) (granting the Commonwealth's motion to intervene in challenge to state election law).

For purposes of appellate intervention, the High Court has examined "the legal 'interest' that a party seeks to 'protect' through intervention on appeal." *Cameron*, 595 U.S. at 277, quoting Fed.R.Civ.P. 24(a)(2). "In defending [Pennsylvania] law, the attorney general asserts a substantial legal interest that sounds in deeper, constitutional considerations." *Id.* Among the States' "[p]aramount . . . sovereign powers is the power to enact and enforce any laws that do not conflict with federal law." *Id.* Consequently, "a State 'clearly has a legitimate interest in the continued enforceability of its own statutes.'" *Id.*, quoting *Maine v. Taylor*, 477 U.S. 131, 137 (1986). A "federal court must 'respect the place of the States in our federal system.'" *Id.*, quoting *Arizonans for Official English v. Arizona*,

520 U.S. 43, 75 (1997). "This means that a State's opportunity to defend its laws in federal court should not be lightly cut off." *Id.*

Respect for state sovereignty also takes "into account the authority of a State to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court." *Id.*, quoting *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019). "[A] State must be able to designate agents to represent it in federal court." *Bethune-Hill*, 587 U.S. at 663. The PUC "enjoyed the authority under state law to defend the constitutionality of" Section 1501 and PUC Regulation 57.76. And, so does the Attorney General. As noted above, the Attorney General is obligated to "uphold and defend the constitutionality of all statutes . . . ." 71 P.S. § 732-204(a)(3). Further, the General Assembly has authorized the Attorney General to "intervene in any [civil] action." 71 P.S. § 732-204(c). As the Pennsylvania Supreme Court has stated, the Commonwealth Attorneys Act "'unambiguously gives the [Attorney General] the authority to represent . . . the Commonwealth' in any civil litigation." *Commonwealth by and through Krasner v. Attorney General*, 309 A.3d 265, 275 (Pa. Cmwlth. 2024), quoting *Synthes USA*, 289 A.3d at 859. Indeed, the Attorney General is the Commonwealth's "chief law officer." Pa. Const., Art. IV, § 4.1; *see Cameron*, 595 U.S. at 278 (noting same with respect to Kentucky Attorney General). The Commonwealth has a "weighty interest . . . protecting its own laws." *Cameron*, 595 U.S. at 278.

That interest is even more pronounced here because of the panel's decision. As the Commonwealth will explain more fully in its petition for *en banc* review, the panel's decision effectively commandeers the Commonwealth's authority over the most "quintessential" state power—the power to regulate its land use—and turns it over to a non-governmental entity. *See Rapanos v. U.S.*, 547 U.S. 715, 738 (2006); *Federal Energy Regulatory Comm'n v. Mississippi*, 456 U.S. 742, 767 n.30 (1982). Further, the panel decision effectively deprives Pennsylvanians of their Fifth Amendment rights, both to due process and not to have their land taken except for public use. There are "important constitutional [and statutory] consideration[s] at stake" here. *See Cameron*, 595 U.S. at 278.[1]

As for undue prejudice or delay to the original parties, there is none. This litigation is over eight years old. In that light, the brief time it would take the Attorney General to prepare an *en banc* petition is not material. Transource has already consented to the PUC's request for an extension for the filing of its *en banc* petition. As for the PUC, it has assured the Attorney General that it recognizes his independent duty to represent the Commonwealth's interests and to seek further

---

[1] The reason why a State permits multiple officials to defend state interests is because "leaders in different branches of government may see the State's interests at stake in litigation differently. Some States may judge that important public perspectives would be lost without a mechanism allowing multiple officials to respond." *Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 185 (2022).

review in his own right if he deems it appropriate. 71 P.S. § 732-204(a)(3), (c).[2] For these reasons, the Attorney General's intervention, on behalf of the Commonwealth and the Consumer Advocate, is warranted.

Given the Attorney General's request to intervene on behalf of the Commonwealth and the Consumer Advocate, and the PUC's decision not to pursue further appellate review, the Attorney General requests permission to withdraw as counsel for the PUC.

Should the Court issue an order granting permission to intervene, the Attorney General respectfully requests an extension of 30 days from the date of that order for the filing of its *en banc* petition. Although undersigned counsel had started to prepare an *en banc* petition, once the PUC decided that it would not move forward with that petition, the preparation of that petition was necessarily paused until the PUC's rationale was received. The Attorney General then determined that it was necessary to intervene in this matter. As noted at the outset, the panel issued a 65-page decision in this complex case involving a highly technical area of law that is governed by both state and federal law.

---

[2] Because the Sixth Circuit made several errors of law in its assessment of the Kentucky Attorney General's motion to intervene, the High Court remanded for the Sixth Circuit to reconsider. The Sixth Circuit granted the Attorney General's motion to intervene. *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 2022 WL 2866607, *1 (6th Cir. 2022).

Finally, because of the emergency nature of this motion, the Attorney General respectfully requests that the Court consider this motion on an expedited basis.

WHEREFORE, the Court should grant the Attorney General's omnibus motion to withdraw as counsel for the PUC, permit the Attorney General to intervene in this action on behalf of the Commonwealth and the Consumer Advocate, and grant the Attorney General an additional 30 days to file an *en banc* petition.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By: */s/ Michael J. Scarinci*

Office of Attorney General
Appellate Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 857-2184 (Direct)
(717) 497-4051 (Cellular)
(717) 772-4526 (Fax)

DATE: October 17, 2025

MICHAEL J. SCARINCI
Senior Deputy Attorney General
No. 323816 (Pa.)

DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section

# CERTIFICATE OF SERVICE

I, Michael J. Scarinci, Senior Deputy Attorney General, do hereby certify that I caused this day to be served the foregoing **Emergency Omnibus Motion** via CM/ECF on all registered users.

*/s/ Michael J. Scarinci*
MICHAEL J. SCARINCI
Senior Deputy Attorney General

Date: October 17, 2025